NOTICE

Decision filed 01/29/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220566-U

NO. 5-22-0566

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 18-CF-399 |
| | ) | |
| JAMES J. LOMAX, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:*    No *per se* conflict of interest existed where plea counsel never assumed the status of an attorney for a prosecution witness. The trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea where the trial court substantially complied with Rule 402 admonishments at the plea hearing.

¶ 2    The defendant, James J. Lomax, pled guilty to one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)) in a partially negotiated plea agreement that included an agreed sentencing cap and the dismissal of an additional charge. Shortly after the plea hearing, appointed plea counsel notified the trial court that he had become aware after the plea hearing that he had a *per se* conflict of interest. The trial court appointed a new attorney to represent the defendant going forward but did not inquire as to the nature of the conflict or when it arose. The defendant later filed a motion to withdraw his guilty plea, arguing that plea counsel

1

provided ineffective assistance and that the trial court failed to substantially comply with the requirements of Illinois Supreme Court Rule 402 (eff. July 1, 2012). The trial court denied his motion, and the defendant filed an appeal.

¶ 3    On direct appeal, the defendant argued that (1) his guilty plea was not knowing and voluntary because the trial court did not substantially comply with Rule 402 when admonishing him at the plea hearing and (2) because the record did not establish whether the defendant received conflict-free representation during the plea proceedings, the cause should be remanded to allow the trial court to make this crucial finding. Because we agreed with the defendant's second contention, we remanded the matter to the trial court to allow it to make that finding but elected not to address the defendant's argument concerning the trial court's admonishments. See *People v. Lomax*, 2022 IL App (5th) 190407-U.

¶ 4    On remand, an evidentiary hearing was held. The trial court determined that plea counsel did, in fact, have a *per se* conflict of interest, but that at the time of the guilty plea hearing, plea counsel was not aware of it. Plea counsel did not become aware of the *per se* conflict until after the guilty plea hearing, but before the defendant's sentencing hearing. The trial court, reasoning that because plea counsel was unaware of the *per se* conflict there could be no adverse impact to the defendant requiring automatic reversal, denied the defendant's motion to withdraw his guilty plea. The defendant filed a timely appeal. For the reasons that follow, we affirm.

¶ 5                                          I. Background

¶ 6    Substantial portions of the factual background were originally set forth in *People v. Lomax*, 2022 IL App (5th) 190407-U. Therefore, we will cite only those facts necessary to this disposition. The defendant was indicted on one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)) and one count of possession of a stolen firearm (*id.* § 24-3.8). He pled

guilty to the charge of unlawful possession of a weapon by a felon in a partially negotiated plea agreement, pursuant to which the State dismissed the second charge and agreed to a six-year sentencing cap, which would be binding on the trial court.

¶ 7    At the November 20, 2018, plea hearing, the trial court admonished the defendant concerning the rights he would give up by pleading guilty. Specifically, the trial court told the defendant that he had the right to be proven guilty beyond a reasonable doubt, the right to a jury trial, the right to be present at his trial, the right to confront and cross-examine witnesses against him, the right to present witnesses and other evidence in his defense, the right to remain silent, and the right to a speedy trial. The trial court advised the defendant that by pleading guilty he was waiving all of these rights, but it did not specifically advise the defendant that he had the right to plead not guilty. The defendant indicated that he understood these rights.

¶ 8    The trial court next admonished the defendant concerning the nature of the charge and the sentencing range for the offense. The trial court explained that the possible sentencing range for unlawful possession of a weapon by a felon was 2 to 10 years (see *id.* § 24-1.1(e)). However, the trial court did not tell the defendant that he would also serve a one-year period of mandatory supervised release (MSR) and did not ask the defendant whether he understood the sentencing range as explained.

¶ 9    After the State presented a factual basis, the prosecutor described the plea agreement. When the trial court asked the defendant if that was his understanding of the agreement, the defendant responded in the affirmative. The trial court then asked the defendant whether anyone had promised him anything in exchange for his plea and whether anyone had threatened or coerced him. In response to both questions, he replied, "No."

¶ 10    The defendant's next court appearance was a status hearing on December 5, 2018. Plea counsel, Phillip Butler, stated as follows: "Your Honor, in this case I've had a *per se* conflict come up that I've become aware of since his open plea. I did explain that to [the defendant] and his need for other representation." The trial court appointed a new attorney to represent the defendant, but did not inquire into either the nature of the conflict or when it arose.

¶ 11    On March 28, 2019, the defendant's second attorney was allowed to withdraw as counsel due to reassignment within the public defender's office. On April 17, 2019, the trial court appointed attorney Matthew Vaughn to represent the defendant.

¶ 12    On July 1, 2019, Vaughn filed on behalf of the defendant a motion to withdraw his guilty plea. He argued that the defendant had received ineffective assistance of counsel during the guilty plea proceedings and that the trial court failed to substantially comply with the requirements of Rule 402 in admonishing the defendant at the plea hearing.

¶ 13    The trial court determined that the defendant's motion to withdraw his plea was premature and declined to rule on it until after sentencing. At the end of the July 19, 2019, sentencing hearing, the trial court sentenced the defendant to five years in prison to be followed by one year of MSR.

¶ 14    On August 26, 2019, the trial court held a hearing on the defendant's motion to withdraw his plea. Defense counsel Vaughn focused his argument on the trial court's failure to fully comply with Rule 402 during the plea hearing. The State acknowledged that the trial court did not fully comply with the requirements of the rule but argued that the trial court had substantially complied. The trial court took the matter under advisement. On September 3, 2019, the trial court denied the defendant's motion to withdraw his plea. The defendant appealed.

¶ 15    On direct appeal, the defendant argued that (1) his guilty plea was not knowing and voluntary because the trial court did not substantially comply with Rule 402 when admonishing

4

him at the plea hearing and (2) because the record did not establish whether the defendant received conflict-free representation during the plea proceedings, the cause should be remanded to allow the trial court to make this crucial finding. We found that, based on the limited information in the record, it was impossible for this court to determine whether plea counsel was operating under a *per se* conflict of interest while representing the defendant at the plea hearing. *Lomax*, 2022 IL App (5th) 190407-U, ¶ 17. Accordingly, we remanded the matter to the trial court to allow it to make that finding but elected not to address the defendant's argument concerning the trial court's admonishments. *Id.* Specifically, we concluded:

> "On remand, if the court determines that Butler had a *per se* conflict of interest that existed at the time of the plea hearing, as stated previously, the defendant will be entitled to 'automatic reversal.' See [*People v. Hernandez*, 231 Ill. 2d 134, 143 (2008)]. This means that if the court makes that finding, he must be allowed to withdraw his plea regardless of whether the plea court's admonishments are deemed to be in substantial compliance with Rule 402. As such, we need not address that issue at this time. If, on the other hand, the court determines that Butler did not have a *per se* conflict of interest at the time of the plea hearing, the defendant would not be barred from raising his Rule 402 claim in a subsequent appeal." *Id.* ¶ 18.

¶ 16    On July 21, 2022, an evidentiary hearing was held to determine whether defense counsel was operating under a *per se* conflict of interest while representing the defendant at the plea hearing. The defendant testified that at the status hearing held on December 5, 2018, following his guilty plea, plea counsel informed him that, due to a conflict in his case, plea counsel could no longer represent him. When the defendant asked if the conflict had anything to do with plea counsel's client Dustin Smith, he indicated to the defendant it did. Smith had been the defendant's

cellmate in the Jefferson County jail in November 2018. The defendant knew plea counsel represented him and Smith at the same time because of his attendance at the same court proceedings as Smith. The defendant did not inquire about the nature of the conflict, and plea counsel did not provide the defendant with any additional information.

¶ 17 Plea counsel also testified at the hearing. On November 20, 2018, he was employed as a public defender in Jefferson County; he was appointed to represent the defendant and was in court with him on that date. To the best of his recollection, the defendant's case had been called before Smith's case that day. At the time of the defendant's plea, plea counsel was not aware of any conflict with respect to either the defendant or Smith. The first time plea counsel recalled being aware of any conflict between the two men was on November 20, 2018, after he spoke with Smith. Plea counsel's recollection was that the defendant entered into his partially negotiated plea before plea counsel spoke to Smith.

¶ 18 Plea counsel testified that he was also appointed to represent Smith for "part of that day" and was with him in court on November 20, 2018. Prior to Smith's case being called, plea counsel learned that Smith intended to turn over information on the defendant to the police to try to get himself a better sentence. Plea counsel informed the court that he had a *per se* conflict the same day he learned of it and was removed from Smith's case at his request on November 20, 2018.

¶ 19 After hearing the arguments of counsel, the court took the matter under advisement. In its written order dated August 31, 2022, the trial court found that plea counsel did, in fact, have a *per se* conflict of interest concerning his representation of the defendant and another defendant client at the time of the plea hearing. However, plea counsel did not become aware of the existence of the *per se* conflict until several days after the plea hearing. The trial court framed the issue on remand as: "should the defendant be entitled to 'automatic reversal' under *People v. Hernandez*,

6

231 Ill. 2d 134, 143 (2008) as cited and relied upon by the Appellate Court in its aforesaid remand, even though his attorney during the guilty plea hearing was completely unaware of any *per se* conflict of interest at the time of that hearing?"

¶ 20    The trial court noted that "[n]either *Hernandez* nor any of the cases cited in [the Rule 23 order] involved a defense attorney who was completely unaware of the *per se* conflict during his or her representation of a defendant during the hearing in question." The trial court then posed the following rhetorical questions: "If an attorney is unaware of a conflict in the representation of that attorney's client, how, then, could the client waive it? Further, how could [the *per se* conflict] affect the representation of that client?" The trial court then reasoned that the holding in *Hernandez* "implies knowledge of the conflict on defense counsel's part. Without knowledge, there can be no 'adverse impact' and thus no conflict *per se* requiring an 'automatic reversal.' " The trial court further reasoned that "to hold that it doesn't matter whether defense counsel knew of the *per se* conflict of interest would result in a standard impossible to meet, particularly in a public defender's office with a heavy case load." On that basis, the trial court once again denied the defendant's motion to withdraw his guilty plea based on defense counsel's *per se* conflict of interest at the time of the plea hearing. The defendant timely filed the instant appeal.

¶ 21                                      II. Analysis

¶ 22                          A. *Per se* Conflict of Interest

¶ 23    The defendant contends that because the trial court held that plea counsel had a *per se* conflict of interest at the time of his plea hearing, it erred in denying his motion to withdraw his guilty plea as directed by this court on remand. He maintains that the record clearly reflects that plea counsel contemporaneously represented him and Smith at the time of the defendant's guilty plea. The State argues that the trial court's finding of a *per se* conflict was incorrect as a matter of

7

law where evidence presented at the hearing conducted pursuant to this court's instructions on remand established that no *per se* conflict of interest existed at the time of the plea hearing.

¶ 24 It is a matter of well-settled law that the sixth amendment guarantees a defendant the right to counsel at all "critical phases" of the criminal process. *Maine v. Moulton*, 474 U.S. 159, 170 (1985). Embedded within this right is the right to counsel who does not labor under a conflict of interest. *People v. Hardin*, 217 Ill. 2d 289, 299 (2005). Illinois distinguishes attorney conflicts of interest by placing them in one of two categories: *per se* and actual. *People v. Fields*, 2012 IL 112438, ¶ 17.

¶ 25 "To establish an actual conflict of interest, a defendant must identify an actual conflict that adversely affected his counsel's performance." *People v. Yost*, 2021 IL 126187, ¶ 38. However, unlike an actual conflict of interest, a *per se* conflict does not require a defendant to establish prejudice. *People v. Stoval*, 40 Ill. 2d 109, 113 (1968). Where a *per se* conflict of interest exists, a defendant is never required to show an adverse impact. *Id.* A *per se* conflict of interest exists when specific facts about the defense attorney's status, by themselves, create a disabling conflict. *Yost*, 2021 IL 126187, ¶ 39.

¶ 26 Illinois law "recognizes only three categories of *per se* conflict of interest: (1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant." *Id.* ¶ 66. "When the record shows that the facts are undisputed, the issue of whether a *per se* conflict exists is a legal question that this court reviews *de novo*." *Fields*, 2012 IL 112438, ¶ 19.

8

¶ 27    In *People v. Morales*, 209 Ill. 2d 340 (2004), cited by the State, our state supreme court addressed a similar issue to that before us. In *Morales*, the defendant was charged with the murder of a drug courier sent by Jorge Hernandez. *Id.* at 344. The defendant's retained counsel represented the defendant as well as Hernandez who was the defendant's superior in the drug distribution organization. *Id.* at 343. Although Hernandez ultimately did not testify at the defendant's trial, the State had identified Hernandez as a witness against the defendant on its witness list. *Id.* During a pretrial hearing, the State advised the trial court of the potential conflict of interest in the defendant's presence, and the defendant waived the potential conflict. *Id.* at 344. At trial, no statement by Hernandez was introduced into evidence against the defendant, but at the sentencing hearing the State introduced parts of a letter that Herandez wrote from jail to a purported member of a drug cartel which implicated the defendant as a drug supplier. *Id.* at 344-45. Although the defendant had waived the potential conflict, following his conviction, the defendant argued on appeal that defense counsel's contemporaneous representation of him and Hernandez created a conflict of interest that deprived him of effective assistance of counsel. *Id.* at 345. The *Morales* court found that although it was undisputed that defense counsel contemporaneously represented the defendant and Hernandez, because Hernandez did not testify at trial, he remained a potential witness. *Id.* at 346. Thus, because Hernandez was never a witness against the defendant, defense counsel never assumed the status of an attorney for a prosecution witness, and, therefore, defense counsel's simultaneous representation did not constitute a *per se* conflict of interest. *Id.*

¶ 28    Here, the undisputed facts reveal that Smith was no more than a potential witness for the State. Review of the record reveals that at the time of the defendant's plea hearing, the State had not yet filed a formal answer to the defendant's motion for discovery nor provided a list of witnesses to the defendant. Additionally, Smith was not called as a witness by the State during any

9

proceeding in the case including the defendant's sentencing hearing or the evidentiary hearing after remand. As in *Morales*, because Smith did not testify against the defendant, plea counsel never assumed the status of an attorney for a prosecution witness, and, thus, no *per se* conflict existed.

¶ 29 "Under a *de novo* standard of review, the reviewing court owes no deference to the trial court's judgment or reasoning." *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 38. An appellate court may affirm a lower court's judgment on any ground found in the record. *People v. Johnson*, 208 Ill. 2d 118, 129 (2003). A reviewing court can sustain the trial court's decision for any appropriate reason found in the record, even if the trial court relied on other grounds and regardless of whether its reasoning was correct. *Id.* We find that plea counsel was not operating under a *per se* conflict of interest at the time of the plea hearing.

¶ 30                                                    B. Admonishments

¶ 31 The defendant next argues that the trial court did not comply with Illinois Supreme Court Rule 402 (eff. July 1, 2012) at his plea hearing, and on that basis, the trial court should have granted his motion to withdraw his guilty plea. Specifically, the defendant contends that the trial court failed to advise him of the statutorily required one-year term of MSR following any period of incarceration, failed to admonish him of his right to plead not guilty, and failed to confirm that he understood that he had the right to plead guilty or not guilty. The State counters that the trial court substantially complied with Rule 402 admonitions during the defendant's guilty plea hearing and, furthermore, that the record establishes that real justice was not denied where the defendant voluntarily and knowingly entered into the plea agreement and was not prejudiced by the trial court's incomplete admonitions.

¶ 32    The act of entering a plea of guilty is "grave and solemn." *Brady v. United States*, 397 U.S. 742, 748 (1970). If a defendant is allowed to change his mind so that a jury can hear his case, the guilty plea would become "a temporary and meaningless formality reversible at the defendant's whim." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975). Allowing a defendant to withdraw his plea is not automatic and should be based on a need to correct a manifest injustice. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). It is the defendant's burden to demonstrate that it is necessary that he be allowed to withdraw his plea. *People v. Dougherty*, 394 Ill. App. 3d 134, 140 (2009).

¶ 33    A trial court should allow a plea to be withdrawn if (1) the plea was entered on a misapprehension of fact or law, (2) there is doubt as to the defendant's guilt, (3) the defendant has a meritorious defense, or (4) the ends of justice would be better served by submitting the case to a jury. *People v. Davis*, 145 Ill. 2d 240, 244 (1991). A trial court's decision to grant or deny a motion to withdraw a guilty plea is within the trial court's sound discretion and will not be reversed unless the trial court clearly abused its discretion. *Delvillar*, 235 Ill. 2d at 519. A trial court's ruling constitutes an abuse of discretion if it is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill. 2d 62, 68 (2009).

¶ 34    Due process requires that a guilty plea must be knowing and voluntary. *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005). Illinois Supreme Court Rule 402(a) requires that, prior to accepting a guilty plea, the trial court admonish the defendant (1) of the nature of the charge; (2) of the minimum and maximum sentence and whether the defendant is subject to extended-term or consecutive sentencing; (3) that the defendant has the right to plead not guilty; and (4) that if the defendant pleads guilty there will not be a trial of any kind, so that by pleading guilty he waives the right to a trial by jury and the right to be confronted with the witnesses against him. Ill. S. Ct.

11

R. 402(a) (eff. July 1, 2012). The trial court must also determine whether the defendant understands those provisions. *Id.* Additionally, if the plea was pursuant to a plea agreement, the agreement shall be stated in open court, and the trial court shall confirm the terms of the agreement with the defendant personally. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). The trial court shall also determine whether a factual basis exists before entering judgment on the guilty plea. Ill. S. Ct. R. 402(c) (eff. July 1, 2012).

¶ 35    In admonishing a defendant, the trial court must substantially comply with the requirements of Rule 402. *Whitfield*, 217 Ill. 2d at 195. Substantial compliance with Rule 402 does not mean literal compliance. *People v. Dismore*, 33 Ill. App. 3d 495, 501-02 (1975). Substantial compliance is determined by the admonishments provided to the defendant at the hearing when the guilty plea is received. *People v. Blankley*, 319 Ill. App. 3d 996, 1007 (2001). A defendant's due process rights are violated if the trial court does not substantially comply with the required admonishments. *Whitfield*, 217 Ill. 2d at 195. However, failure to comply with all the Rule 402 admonishments does not necessarily establish a due process violation or other grounds that would allow a defendant to withdraw his guilty plea. *Dougherty*, 394 Ill. App. 3d at 139. Defendant must establish that real justice was denied or that he was prejudiced by the inadequate admonishments. *Id.* We review the trial court's compliance with Rule 402(a) on a *de novo* basis. *People v. Chavez*, 2013 IL App (4th) 120259, ¶ 14.

¶ 36    Illinois courts have held that a trial court can be in substantial compliance with Rule 402 even if it omits one or more of the admonitions. In *People v. Dougherty*, the court found that there was substantial compliance with Rule 402 even though the trial judge did not admonish the defendant on every provision. *Dougherty*, 394 Ill. App. 3d at 139. The *Dougherty* court found that the trial judge substantially complied with Rule 402 because the evidence established that the

12

defendant entered his plea voluntarily and with full understanding. *Id.* The court reasoned that the purpose of Rule 402 admonishments "is to ensure that a defendant understands his plea, the rights he has waived by pleading guilty and the consequences of his action." *Id.* at 138. Literal compliance is not mandated. *Id.* at 139. " 'Substantial compliance' means that although the trial court did not recite to the defendant, and ask defendant if he understood, all the components of Rule 402(a), the record nevertheless affirmatively and specifically shows that the defendant understood them." *Id.* at 138. Whether the standard of "substantial compliance" has been met depends upon the facts of each case. *Id.* To determine whether the defendant's guilty plea was intelligently and voluntarily given in the absence of full compliance with the Rule 402 admonishments, a reviewing court may consider the entire record. *Id.* at 139.

¶ 37    The defendant asserts, and the State concedes, that the trial court failed to advise him of the MSR period following a sentence of incarceration. The defendant cites *People v. Whitfield* in support of his position that the trial court's failure to do so was an error. 217 Ill. 2d at 188. In entering his guilty plea, the defendant in *Whitfield* bargained for a specific sentence; however, the trial court failed to advise him about the MSR term. *Id.* at 201. With the MSR term added, the defendant's sentence was greater than the agreed upon sentence. *Id.* at 201-02. The *Whitfield* court concluded the defendant was prejudiced by the omitted MSR admonition because he received a more onerous sentence than he had been promised when he pled guilty. *Id.* Thus, the *Whitfield* court found that the defendant's due process rights were violated, and he was entitled to postconviction relief as a result. *Id.* at 202.

¶ 38    In the instant case, during the plea hearing, the trial court informed the defendant that the minimum sentence he could receive was 2 years' imprisonment and the maximum sentence was 10 years' imprisonment. The court did not admonish the defendant about the one-year MSR to

13

follow any prison sentence. However, unlike the defendant in *Whitfield*, the defendant here did not bargain for a specific sentence. The plea was not fully negotiated in that the State and the defendant had not reached an agreement as to the specific sentence he would receive in exchange for his plea. At the subsequent sentencing hearing on a later date, the defendant was sentenced to five years' imprisonment with a one-year term of MSR, for a total six-year sentence. This 6-year sentence is less than the 10-year maximum the court admonished the defendant he could receive. Additionally, at the plea hearing, the State agreed to cap its recommended sentence at six years and asked that the six-year cap be binding on the court. Thus, here, the defendant's sentence was neither more onerous than the maximum sentence he was admonished by the trial court that he could receive by law, nor was it more onerous than his partially-agreed bargain—the six-year cap—with the State. Therefore, because the defendant was not prejudiced by the trial court's omission of the MSR admonition, the omission could not reasonably have affected the voluntariness of his plea. See *People v. McCoy*, 74 Ill. 2d 398, 403 (1979) (concluding the plea was intelligently and voluntarily made despite the omitted MSR admonition and the defendant was not prejudiced because the sentence imposed, together with MSR, was substantially less than the maximum sentence to which the defendant knew he could be sentenced).

¶ 39　The defendant next asserts that the trial court did not inform him of his right to plead not guilty or persist in that plea, or to plead guilty, as required by Rule 402(a)(3). The record shows the trial court did not specifically, in the words provided in the rule, inform the defendant of this right. However, the object and purpose of a defendant being advised that he has a right to plead not guilty and persist in that plea is so he will be aware of the alternatives available to him. *People v. Krouse*, 7 Ill. App. 3d 754, 757 (5th Dist. 1972); *People v. Abel*, 10 Ill. App. 3d 210, 213 (4th Dist. 1973).

¶ 40 The *Krouse* court, in addressing the defendant's contention that he was not admonished of his right to plead not guilty, noted the trial court advised the defendant he was entitled to a trial by jury. *Krouse*, 7 Ill. App. 3d at 757. Additionally, the trial court subsequently asked the defendant if he understood that it would be the responsibility of the State to prove him guilty of the charges against him beyond a reasonable doubt. *Id.* The *Krouse* court concluded the trial court had substantially complied with Rule 402, and "the deficiencies [were] not sufficient to constitute reversible error." *Id.* at 757-58.

¶ 41 Similarly, in *Abel*, the defendant was not explicitly advised that he had a right to plead not guilty, but he was advised of his right to a trial by jury, a trial by the court, and of the State's burden to prove him guilty beyond a reasonable doubt. *Abel*, 10 Ill. App. 3d at 213. In agreeing with the *Krouse* court's statement that the object and purpose was to make the defendant aware of the alternatives available to him, the *Abel* court found it clear that the defendant was given to understand his available alternatives. *Id.*

¶ 42 Similarly, the defendant in this case was advised by the trial court that he had a right to a jury trial and to be proven guilty beyond a reasonable doubt. When the trial court asked him if he understood he would be waiving those rights by pleading guilty, the defendant indicated he did. The record demonstrates the defendant was informed he could, as an alternative to pleading guilty, proceed to a jury trial with his attorney, confront the witnesses against him, remain silent, and make the State prove him guilty beyond a reasonable doubt. The defendant understood that, as shown by his answer to the trial court, such alternatives would no longer be available to him if he pled guilty. He was given to understand, then, that he would be giving up the status quo—that is, his not guilty plea—by changing his plea to guilty. Thus, the trial court in this case substantially complied with the requirement of Rule 402(a)(3).

¶ 43    The trial court also informed the defendant of the nature of the charges against him when it read count I of the bill of indictment to which the defendant was pleading. The defendant correctly asserts, however, that he was not asked if he understood the charges. Illinois Supreme Court Rule 402(a)(3) requires the trial court to confirm that the defendant understands that he has the right to plead guilty or not guilty. Ill. S. Ct. R. 402(a)(3) (eff. July 1, 2012). However, in determining whether a defendant understood the nature of the charges against him, the entire record may be considered. *People v. Sutherland*, 128 Ill. App. 3d 415, 419 (1984). In reviewing the admonishments provided, "the remarks and advice of the court must be read in a practical and realistic manner." *Id.* (discussing the predecessor to Rule 402 (citing *People v. Flathers*, 414 Ill. 486 (1953))). "If an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule, the essentials have been complied with." *Id.* A review of the record in this case shows the defendant cannot reasonably contend he did not understand the nature of the charges.

¶ 44    The defendant was advised of the charges at his court appearance on August 28, 2018. Although the trial court found no probable cause at the preliminary hearing in this case, the defendant was present and heard the witness testify as to the evidence in the case. At a bond reduction hearing after the defendant was arrested following a bill of indictment being handed down, the State introduced, by way of a detailed proffer, additional evidence that came to its attention after the initial preliminary hearing. When the trial court reminded the defendant that the bond hearing was not a trial, the defendant responded that the State's proffer "sounded like a trial argument he just presented." The fact that the defendant recognized the presentation of the State's evidence as a potential trial argument shows that he understood the nature of the charges against him. Furthermore, after hearing the State's recitation of the factual basis to support the charge, the

16

defendant still wished to enter into the agreement that was presented to the court. Review of the entire record reveals that the defendant clearly understood the nature of the charges.

¶ 45    Having reviewed the admonishments provided by the trial court to the defendant at his plea hearing, and after considering the entirety of the record on appeal, we conclude that the trial court substantially complied with the Illinois Supreme Court's prescribed requirements. We find that the admonishments provided in this case affirmatively establish "that the defendant voluntarily and understandingly entered his plea of guilty." Ill. S. Ct. R. 402, Committee Comments (rev. May 20, 1997) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)). For these reasons, we also conclude that the defendant's due process rights were not violated and, thus, he was not prejudiced by the incomplete admonishments. *Dougherty*, 394 Ill. App. 3d at 139 (citing *Davis*, 145 Ill. 2d at 244). Accordingly, we find, on the facts before us, that the trial court's decision to deny the defendant's motion to withdraw his guilty plea did not constitute an abuse of discretion.

¶ 46                                        III. Conclusion

¶ 47    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 48    Affirmed.